UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No.  4:10-CR-00415 HEA TIA |
| JOVICA PETROVIC, | ) ) ) |
| Defendant. | ) |

**DEFENDANT'S REPLY TO GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS COUNTS I-IV OF THE SUPERSEDING INDICTMENT**

COMES NOW Defendant Jovica Petrovic ("Mr. Petrovic"), by and through the undersigned counsel, and for his Reply to the Government's Response to his Motion to Dismiss Counts I-IV of the Superseding Indictment, states as follows:

**INTRODUCTION**

In Counts I-IV of the Superseding Indictment, Mr. Petrovic is charged with four counts of interstate stalking and harassment in violation of protection orders, which specifically allege that Mr. Petrovic sent four pieces of correspondence to third parties using the mail or interstate facilities.  The first correspondence, a Federal Express package, contained a catalogue of text messages exchanged between Mr. Petrovic and the alleged victim of his crimes, M.P, and was sent to M.P.'s former spouse.  The remaining correspondence, also sent to third parties and not to M.P., contains commentary such as, "Do you know how is to be married with a slut?" and other similar commentary that, while valueless, does not patently exhibit characteristics of stalking, harassing, threatening, or indicate any intent to extort anything from M.P. or from any other individual.  The speech the United States seeks to punish under Counts I-IV of the Superseding

Indictment is protected speech under the First Amendment to the United States Constitution, and the Government points to no authority to the contrary.

Because the speech charged in Counts I-IV of the Indictment is entitled to protection under the First Amendment, it is incumbent upon this Court to analyze whether Title 18, United States Code, §2261A(2)(A) impermissibly infringes upon Mr. Petrovic's rights under the First Amendment. Because 18 U.S.C. §2261A(2)(A) is not narrowly tailored to meet a compelling interest—as evidenced by the Government's prosecution of Mr. Petrovic's distribution of these materials—it must be held unconstitutional in this instance as it applies to Mr. Petrovic.

The Government focuses its Response to Mr. Petrovic's Motion to Dismiss on three arguments that Mr. Petrovic's speech is not protected by the First Amendment: (1) Mr. Petrovic's speech serves as the essential vehicle of extortion; (2) Mr. Petrovic's speech is harassing; (3) Mr. Petrovic's speech constitutes an invasion of M.P.'s privacy. For the reasons outlined in this Reply and in Mr. Petrovic's pretrial motions, these arguments are without merit. Rather, the charged communications and the Government's arguments with respect to these communications, which were not even sent to M.P., reveal that Mr. Petrovic's prosecution is an attempt to punish speech that the Government has deemed meritless, something that belies the United States Supreme Court's recent reminder in *United States v. Stevens*, 130 S.Ct. 1577 (2010). 18 U.S.C. §2261A(2)(A), as the Government applies it to Mr. Petrovic, seeks to punish Mr. Petrovic's speech based on the very sort of *ad hoc* judgment prohibited by the First Amendment, and the statute has more than an incidental restrictive impact on Mr. Petrovic's right to free speech and an impact greater than is essential to the furtherance of the United States' interest in preventing interstate harassment. Accordingly, this Court must hold 18 U.S.C.

§2261A(2)(A) invalid as it applies to Mr. Petrovic for violating Mr. Petrovic's rights under the First Amendment to the Constitution.

## ARGUMENT

### A.     Mr. Petrovic's Speech And Conduct Are Protected By The First Amendment

The communications charged under Counts I-IV of the Superseding Indictment constitute protected speech under the First Amendment to the United States Constitution and longstanding case law interpreting this Amendment.

> The First Amendment's guarantee of free speech does not extend only to categories of speech that survive an *ad hoc* balancing of relative social costs and benefits. The First Amendment itself reflects a judgment by the American people that the benefits of its restrictions on the Government outweigh the costs. Our Constitution forecloses any attempt to revise that judgment simply on the basis that some speech is not worth it.

*United States v. Stevens*, 130 S.Ct. 1577, 1585-86 (2010).

### 1.     The Government Mischaracterizes Mr. Petrovic's Speech, And Its Arguments That Mr. Petrovic's Speech Is Not Entitled To Protection Are Without Merit

The Government contends that because the speech contained in Mr. Petrovic's FedEx package and postcards—the conduct charged in Counts I-IV of the Superseding Indictment under 18 U.S.C. §2261A(2)(A) as Interstate Stalking and Harassment in Violation of Protection Orders—was "the essential vehicle[] through which Petrovic carried out his extortionate threats against M.P.," this speech is not afforded protection under the First Amendment. Respectfully, this is a transparent bootstrap argument. In other words, the Government characterizes the communications contained in Mr. Petrovic's Federal Express package and postcards as part of generally extortionate conduct to uphold the constitutionality of Counts I-IV of the Superseding Indictment. Because these materials were not sent to the alleged victim and because a plain reading of these materials does not reveal any explicit language that would independently

3

constitute extortion, the Government must rely on unproven facts to uphold its claim that these materials are the "vehicle of extortion."  Similarly, the Government's argument that Mr. Petrovic's charged communication is not protected by the First Amendment because it comprises stalking, harassing behavior ignores the reality of the materials charged under Counts I-IV of the Superseding Indictment as much as it does longstanding First Amendment precedent. The Government's arguments are not compelling where, as here, the charged communication is not patently stalking or harassing—indeed, none of these materials were even sent to M.P.

While the Supreme Court has "permitted restrictions upon the content of speech in a few limited areas . . . [including] . . . speech integral to criminal conduct," it does not follow that the Government may charge Mr. Petrovic with interstate stalking for disseminating the communications charged in Counts I-IV and uphold the constitutionality of its charges with mere allegations that the underlying motive of the disseminated communication had an alternate, extortionate criminal purpose. *See Stevens*, 130 S.Ct. at 1584.  This is particularly true here, where the Government has not charged Mr. Petrovic's website as a form of extortion or interstate stalking, yet seeks to divine a criminal purpose from the charged communications based on this very website.  Indeed, the Government points only to *Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490 (1949), for its assertion that Mr. Petrovic's speech is unprotected because it was "integral to criminal conduct."  In *Giboney*, though, the use of the phrase "integral to criminal conduct" must be taken in the proper context:  regarding alleged violations of Missouri's law against restraint of trade, the Court based its *dicta* that local union members' picketing was not protected by the First Amendment on "admissions . . . undisputed evidence . . . [and] unchallenged findings."  *See Giboney*, 336 U.S. at 494-99.  The distinctions between *Giboney* and the case at bar are too numerous to catalogue, but perhaps the most important is that the

4

appellants in *Giboney* expressly admitted that their "sole immediate object" of picketing was to achieve the very restraint of trade prohibited by the applicable Missouri law.  *Id.* at 498.  By contrast, Petrovic denies that sending the materials charged in Counts I-IV of the Superseding Indictment bears any relation to the Government's now-alleged-but-not-charged "vehicle" of his crime, extortion.  The Government's attempt to characterize the speech contained in Mr. Petrovic's charged communication as "integral to criminal conduct" is thus misplaced and unsupported by precedent.

Neither does the Ninth Circuit case that the Government cites out of context for the proposition that "[b]lackmail and extortion—the threat that the speaker will say or do something unpleasant unless you take, or refrain from taking, certain actions—are not constitutionally protected" apply to Mr. Petrovic.  *Planned Parenthood of Columbia/Willamette v. Am. Coalition of Life Activists*, 244 F.3d 1007, 1015 n.8 (9th Cir. 2001).  Rather, as the Court's painstaking discussion and myriad citations to precedent indicate, *Planned Parenthood* instead must be taken in context with years of First Amendment precedent.  *Planned Parenthood* addressed when speech that potentially threatens violence may be protected by the First Amendment.  *See id.*  Accordingly, the thrust of the case dealt with when speech is or may be interpreted as backed by a threat of violence; indeed, the procedural posture of the case required the Ninth Circuit to review a jury instruction "that defendants could only be liable if their statement were 'true threats' and therefore unprotected by the First Amendment."  *Id.* at 1013.  Only in this context did *Planned Parenthood* even address extortion, and then only by way of illustration that "true threats"—as defined in *Watts v. U.S.*, 394 U.S. 705 (1969)—are not constitutionally protected.  *Id.* at 1015, n.8.  The Government has not and cannot allege that the speech Mr. Petrovic is charged with sending in Counts I-IV of the Indictment is a "true threat."

5

While a law may regulate certain categories of expression without offending the First Amendment, these categories are few and narrowly drawn, including: (1) fighting words likely to incite an immediate breach of the peace; (2) speech directed to and likely to incite violence; and (3) true threats. *Virginia v. Black*, 538 U.S. 343, 358-59 (2003), citing *Chaplinsky v. New Hampshire*, 315 U.S. 568, 571-72 (1942), *Brandenberg v. Ohio*, 395 U.S. 444, 447 (1969), and *Watts*, 394 U.S. at 708. The Government makes no effort to characterize the communications charged in Counts I-IV as within any of these proscribable categories, and with good reason—these communications, sent to third parties, do not fit within any of these categories and are, to the contrary, entitled to full protection under the First Amendment.

The only category in which Mr. Petrovic's speech even arguably falls is that of a "true threat," but such argument must fail. True threats encompass those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence toward a particular individual or group. *Black*, 538 U.S. at 359. A review of the actual content of Mr. Petrovic's communications that the Government elected to charge in Counts I-IV reveals no such characteristics. (See Exhibits A-C to Defendant's Pretrial Motions, comprising materials charged in Counts II-IV of the Superseding Indictment and containing communication purporting to be from M.P. and/or containing samples of text messages exchanged between Mr. Petrovic and M.P. The materials charged in Count I of the Superseding Indictment have been omitted because they are voluminous).

The Government cites a survey of cases where threatening behavior was found not to enjoy protection under the First Amendment. Here, though, the communications charged in Counts I-IV were not even sent to M.P., and are clearly not in the same category—even if they were sent to M.P.—as 50 verbal death threats per day and other language that may properly be

6

proscribed in accordance with *Black*, *Chaplinsky*, *Brandenberg*, or *Watts*.  *See, e.g. Staley v. Jones*, 239 F.3d 769, 786 (6th Cir. 2001).

Particularly where the Government chose to charge communications disseminated to third parties under Counts I-IV, the Court must reject the Government's classification of these communications alongside cases addressing serious threats of violence directed to the victims of these crimes.  In addition, the Court should not be compelled by the Government's claim that these communications comprised an integral part of generally extortionate conduct, as this is refuted by a simple glance at the charged materials.  Rather, the materials charged in Counts I-IV are entitled to full First Amendment protection, and 18 U.S.C. §2261A(2)(A) violates Mr. Petrovic's right to freedom of speech guaranteed by the First Amendment.

### 2. *Coplin v. Fairfield* Does Not Compel a Different Conclusion

*Coplin v. Fairfield* in no way vitiates the protection that the charged communication enjoys.  111 F.3d 1395 (8th Cir. 1997).  Rather, the Government's discussion of *Coplin* and its supposed applicability to Mr. Petrovic is simply out of context.  This Court should decline the Government's invitation to extend *Coplin*'s test for civil tort suits for invasion of privacy to the case at bar, where Mr. Petrovic faces substantial prison time if convicted under 18 U.S.C. §2261A(2)(A), as this would represent a gross misapplication and extension of the Government's power to regulate speech.

In *Coplin*, talk show host Randy Coplin's ("Coplin") television program was removed from the air following a segment in which he encouraged callers to telephone the show with details of their neighbors' sexual proclivities.  *Id.* at 1398-1401.  Coplin sued the local television committee, along with the Iowa City Council, for violation of his First Amendment rights under 42 U.S.C. §1983.  *Id.* at 1398.  Summary judgment was issued against Coplin on the basis that

7

his speech was proscribable as an invasion of privacy if true, as defamation if false. *Id.* at 1402-03. In its discussion of the issues before it, and in arriving at what the Government relies on as a four-prong test to justify Mr. Petrovic's prosecution in this matter, the Eighth Circuit clearly and repeatedly indicates that its holding is limited in scope to civil, state tort actions for invasion of privacy. *See id.* at 1403 ("As the Supreme Court has recognized, there is 'tension between the right to free press, on the one hand, and the protections which various statutes and common-law doctrines accord to personal privacy against the publication of truthful information.'"); *id.* at 1404 ("Instead, after reviewing Supreme Court precedent and the decisions of other circuits that have faced the tension between the First Amendment's protection of free speech and state-law actions in tort for the invasion of privacy . . ."); *id.* at 1407 ("We call to mind two of the cardinal rules governing the federal courts: one, never to anticipate a question of constitutional law in advance of the necessity of deciding it; the other never to formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied.") (citing *Brockett v. Spokane Arcades, Inc.*, 472 U.S. 491, 501). *Coplin* roots its holding and analysis in civil precedent. *See id.* at 1402-1407 (citing *The Florida Star v. B.J.F.*, 491 U.S. 524 (1989); *Haynes v. Alfred A. Knopf, Inc.*, 8 F.3d 1222 (7th Cir. 1993); *Gilbert v. Medical Economics Co.*, 665 F.2d 305 (10th Cir. 1981)).

   The distinction is critical. If Mr. Petrovic were bringing suit for injunction or damages, perhaps the "test" the Government espouses to deprive Mr. Petrovic of his First Amendment protections would bar recovery. However, where Mr. Petrovic stands accused of charges of interstate stalking that might cost him several years of his life, *Coplin* has no application. Moreover, as the Government points out in its response, the *Coplin* test is only intended to apply to "speech that reveals truthful and accurate facts about a private individual." 111 F.3d at 1405.

Even a cursory review of the speech contained in the materials referenced in Counts I-IV of the Superseding Indictment—for example, "I am putting my life back together and become R.B.'s Mistress!"—reveals that *Coplin* has no application to the facts of this case because it does not comprise truthful, accurate information about M.P.  Finally, even if *Coplin* were applicable, the materials referenced in Counts I-IV in the Indictment fall well short of the "highly offensive" requirement of this test, as evidenced by a review of the charged materials.

Because *Coplin* has no application to the facts of this case, it does not alter or detract from the protection afforded Mr. Petrovic's speech by the First Amendment.

### B. The *O'Brien* Test Dictates That 18 U.S.C. §2261A(2)(A) Is Unconstitutional As Applied To Petrovic

18 U.S.C. §2261A(2)(A) is invalid as it applies to Mr. Petrovic because it has more than an incidental restrictive impact on Mr. Petrovic's right to free speech, because its impact is greater than is essential to the furtherance of the United States' interest in preventing interstate harassment, and because the governmental interest under 18 U.S.C. §2261A(2)(A) is related to the suppression of Mr. Petrovic's free expression.

Under *U.S. v. O'Brien*, a law is "sufficiently justified" (1) if it is within the constitutional power of the Government; (2) if it furthers an important or substantial Government interest; (3) if the governmental interest is unrelated to the suppression of free expression; and (4) if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of the governmental interest.  391 U.S. 367, 377 (1968).  Because 18 U.S.C. §2261A(2)(A) is not justified under these criteria as the Government seeks to apply it to Mr. Petrovic, this Court must hold the statute invalid as it applies to Mr. Petrovic.

The Government's contention that Mr. Petrovic "fails even to reach the starting blocks of the *O'Brien* test" is without merit, for reasons described *supra*.  Because Mr. Petrovic's speech is

9

entitled to protection under the First Amendment, *O'Brien*'s elements must be met for 18 U.S.C. §2261A(2)(A) to withstand constitutional scrutiny, and the Government's conclusion that *O'Brien* applies <u>only</u> in instances where expressive behavior constitutes First Amendment—protected speech reads *O'Brien* far too narrowly.

Further, the Government's argument that 18 U.S.C. §2261A(2)(A) is targeted at "the independent noncommunicative impact" of conduct—in *O'Brien*, the burning of one's draft card—is without merit, where here Mr. Petrovic is charged for the very fact that he communicated his ideas regarding M.P. The Government cannot contend that Mr. Petrovic would be charged under 18 U.S.C. §2261A(2)(A) if the package and postcards he sent did not contain information about M.P. that the Government deems offensive.

As indicated previously, the communication charged in Counts I-IV of the Superseding Indictment consists of Mr. Petrovic disseminating information to third parties about himself, M.P., and their troubled relationship. The implication is that Mr. Petrovic's speech, by virtue of its very content, is criminally punishable. Stated another way, because the Federal Express package and the postcards referenced in Counts I-IV of the Superseding Indictment were not even sent to M.P., their distressing intent and result can be inferred only based on an *ad hoc* judgment that the content of this interstate communication is so reprehensible as to merit punishment. In addition, the substantial amount of jail time faced by Mr. Petrovic represents more than an incidental restriction on his liberty and one greater than necessary to the furtherance of the Government's interest as applied to Mr. Petrovic. For instance, if Mr. Petrovic had published a message similar to the charged materials in an interstate periodical, this would constitute a more traditional exercise of the First Amendment right to free speech. Yet, if it could be proven that this publication was done with the intent to harass, and M.P. happened to

10

suffer emotional distress as a result of this publication, 18 U.S.C. §2261A(2)(A) could theoretically be used to prosecute such protected speech.  Here, where the charged communications were not even sent to M.P., the situation is analogous, and it is equally important that Mr. Petrovic's First Amendment freedoms be observed.  Though Mr. Petrovic's dissemination was to select individuals rather than in an open forum such as an interstate periodical, the charged communication enjoys no less protection under the First Amendment.  Rather, only the Government's *ad hoc* judgment that the substance of the charged communication is offensive drives its prosecution under 18 U.S.C. §2261A(2)(A).  However, because "[t]he First Amendment itself reflects a judgment by the American people that the benefits of its restrictions on the Government outweigh the costs, . . . [the] Constitution forecloses any attempt to revise that judgment simply on the basis that some speech is not worth it."  *Stevens*, 130 S.Ct. at 1585-86.

Accordingly, this Court must hold 18 U.S.C. §2261A(2)(A) invalid as it applies to Mr. Petrovic, in that the statute has more than an incidental restrictive impact on Mr. Petrovic's right to free speech, its impact is greater than is essential to the furtherance of the United States' interest in preventing interstate harassment, and its proposed use under the facts of this case is directly related to the suppression of Mr. Petrovic's free expression.

C.    **18 U.S.C. §2261A(2)(A) Is Facially Invalid**

In the alternative, 18 U.S.C. §2261A(2)(A) is facially invalid because a substantial number of its applications are unconstitutional.  A typical facial attack to a statute requires a showing that no set of circumstances exists under which the statute at issue would be valid.  *United States v. Stevens*, 130 S.Ct. 1577, 1587 (2010).  When dealing with a statute that proscribes the freedom of speech, though, the law "recognizes 'a second type of facial

challenge,' whereby a law may be invalidated as overbroad if 'a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *Id.*, citing *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 449. Because 18 U.S.C. §2261A(2)(A) is a statute of alarming breadth that infringes upon its violators' First Amendment rights in a substantial number of its applications, including the application outlined *supra*, this statute is facially invalid.

## CONCLUSION

Defendant Jovica Petrovic requests that this Court dismiss Counts I-IV of the Superseding Indictment, as the Government's proposed application of 18 U.S.C. §2261A(2)(A) violates Mr. Petrovic's rights under the First Amendment to the United States Constitution. In the alternative, Mr. Petrovic requests that this Court dismiss Counts I-IV of the Superseding Indictment, as 18 U.S.C. §2261A(2)(A) is overbroad and must be held facially invalid.

    Respectfully submitted,

    JENSEN, BARTLETT & SCHELP, LLC

    *s/Matthew T. Schelp*
    MATTHEW T. SCHELP, #45724MO
    Jensen, Bartlett & Schelp, LLC
    222 S. Central Ave, Suite 110
    St. Louis, MO 63105
    (314) 725-3939 Ph
    (314) 725-5595 Fx
    MSchelp@jbslawyers.com

**CERTIFICATE OF SERVICE**

I hereby certify that on January 4, 2011, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon the following:

    D. John Sauer
    Office of U.S. Attorney
    111 S. Tenth Street, 20th Floor
    St. Louis, MO 63102

                                            *s/ Matthew T. Schelp*
                                            MATTHEW T. SCHELP, #45724MO
                                            Attorney for Defendant